UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD BECKWITH | ) | CASE NO. 5:13CV1042 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Richard Beckwith Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his October 19, 2011 decision in finding that Plaintiff was not disabled because he could perform jobs that exist in significant numbers in the national economy (Tr. 66-84). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.     PROCEDURAL HISTORY**

Plaintiff, Richard Beckwith, filed his application for DIB and SSI on September 30, 2009, alleging he became disabled on July 6, 2005 (Tr. 191-200). Plaintiff's application was denied initially and on reconsideration (Tr. 146-156, 159-161). Plaintiff requested a hearing before an ALJ, and, on September 13, 2011, a hearing was held, where Plaintiff appeared with counsel and testified before the ALJ and Lynn Smith, a vocational expert (VE), also testified.

1

On October 19, 2011, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 71-78). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-7). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g) and 42 U.S.C. Section 1383(c)(3).

## II.  STATEMENT OF FACTS

Plaintiff was born on July 22, 1980, which made him twenty-four years old on his alleged onset date. Plaintiff has a high school education and past work experience as a machine operator and assembler (Tr. 96, 117, 226, 231).

## III.  SUMMARY OF MEDICAL EVIDENCE

Plaintiff sustained a left-sided chest injury in 2004 (Tr. 336). X-rays since 2005 reveal no evidence of a cardiopulmonary disease, and, in 2008, an emergency room (ER) physician recommended that Plaintiff return to work despite his reported symptoms of chest pain (Tr. 336, 339, 344, 356, 359, 442, 444, 485, 488, 525). In 2010, Gary Hinzman, M.D. and Willa Calwell, M.D., medical experts conferring with the state agency, reviewed the medical evidence of Plaintiff's physical impairment and opined that Plaintiff's impairment did not preclude work-related activities (Tr. 396-405).

Similarly, at the administrative hearing, Plaintiff's attorney conceded that Plaintiff's physical impairment did not preclude work activity (Tr. 90). The attorney also informed the ALJ that any basis for "disability" would be "under the psychological aspect," and due to the lack of psychological

treatment evidence pre-application, he indicated that he would be willing to amend Plaintiff's onset date in this case (Tr. 90). Thus, Plaintiff's appeal in this case only deals with the allegations of a severe psychological impairment (Pl.'s Br. at 12-19).

School records show that Plaintiff experienced adverse behavioral symptoms as a child after the accidental shooting of his older brother, the divorce of his parents, and physical abuse issues (Tr. 306). Psychological reports revealed that frequent absences from school and somatic complaints reflected Plaintiff's problems with "avoidance" (Tr. 310). Specifically, Plaintiff began smoking at age eleven, drinking at age thirteen, smoking and selling marijuana into his teen years, and was briefly incarcerated on occasions in the county jail (Tr. 432, 434-35). Plaintiff also has a life-long history of telling exaggerated or untrue stories and of not following up with medication and therapy recommendations since childhood (Tr. 306, 311, 324).

Although Plaintiff alleges disability since July 2005, he sought no psychological treatment for his present allegations before November 2010, more than a year <u>after</u> applying for DIB and SSI (Tr. 374, 432). Medical records (ER examinations) contemporaneous to Plaintiff's claim in 2009 noted that Plaintiff was rational and displayed no signs or symptoms of psychosis or suicide ideation (Tr. 356).

Robert F. Dallara, Ph.D., a consultative examiner referred by the state agency post-application in 2009, noted that although it was difficult to get direct answers from Plaintiff, Plaintiff displayed no overt signs of anxiety, delusions, or dissociative experiences at his evaluation (Tr. 375). Dr. Dallara explicitly noted that Plaintiff denied frequent panic symptoms, hallucinations, or difficulty with memory (Tr. 375). Dr. Dallara noted no significant findings, and Plaintiff reported no more than occasional nightmares (Tr. 375). Dr. Dallara diagnosed Plaintiff with a mood disorder (Tr. 376). He also assessed that Plaintiff's work-related functional limitations were at most mild (Tr. 377).

In November 2010, more than a year after Plaintiff submitted his claim for DIB and SSI, Wayne County Department of Job and Family Services referred Plaintiff to Dr. Huhn (Tr. 432). Dr. Huhn's evaluation was to assess the mental, physical, and substance abuse obstacles interfering with Plaintiff's ability to find and maintain employment (Tr. 432). Dr. Huhn completed a detailed intake assessment over a three-day period, and diagnosed major depression, recurrent, severe without psychotic features; PTSD; and cannabis abuse (Tr. 432-40).

Dr. Huhn detailed Plaintiff's family history and childhood issues, Plaintiff's past and current substance abuse, and Plaintiff's refusal to comply with treatment recommendations (Tr. 332-35). Dr. Huhn noted that Plaintiff had a routine of insufficient exercise, irregular eating, and moderate-to-heavy caffeine intake (Tr. 334). Like Plaintiff's childhood psychologist (Tr. 310), Dr. Huhn summarized that Plaintiff had a profile that indicated an avoidant passive-aggressive personality with depressive and self-defeating traits (Tr. 437). Dr. Huhn assessed that Plaintiff's health was unstable due to a lack of treatment, e.g., counseling and medication for emotional and drug problems (Tr. 439). He opined that Plaintiff's emotional and drug issues would limit the "types of work" that he can do (Tr. 439).

Six months later, Dr. Huhn wrote a letter to Plaintiff's attorney, indicating that after just sixteen sessions, Plaintiff had made some progress, but was using marijuana daily, and refusing to take any medication to control his anxiety and depressive symptoms (Tr. 430). In Dr. Huhn's opinion, Plaintiff needs to stop self-medicating with marijuana and agree to psychiatric medication and therapy to gain greater control over his symptoms (Tr. 430).

In 2011, Plaintiff presented to Viola Startzman Free Clinic, complaining of chest pain and anxiety (Tr. 410). He reported taking Xanax belonging to others, and refused "psych" medication (Tr. 410). The attending nurse advised Plaintiff to stop taking medication from others, and referred him

4

to the Counseling Center of Wayne & Holmes Counties (Wayne Counseling) (Tr. 410).

Plaintiff presented to Wayne Counseling and reported that he had applied for DIB and SSI (Tr. 450-52). Plaintiff attended three one-hour counseling sessions, and no more than mild-to-moderate functional limitations, from a panic disorder and poly-substance abuse disorder, were noted (Tr. 450-52). Plaintiff's social worker noted that Plaintiff's treatment goal consisted only of "getting out and having a normal life" (Tr. 36, 460). In June 2011, Dr. Huhn noted that Plaintiff had made some progress, notwithstanding his opposition to taking any medication to control reported symptoms and his daily marijuana use (Tr. 430).

Throughout 2011, Plaintiff continued with periodic counseling for his reports of anxiety and isolation (Tr. 476-522). Plaintiff continued to drink alcohol and refuse medication recommendations (Tr. 476-522). He was very resistant to changing his routine (Tr. 476).

Plaintiff's treating nurse, Sarah Zimmerman, CNP, noted that Plaintiff was off all medications and insisted on Xanax only (Tr. 465). She advised Plaintiff that she would not give additional Xanax, and that he would have to see a psychiatrist for prescription care (Tr. 465, 472). Although Plaintiff continued to drink and use marijuana, abuse his Xanax prescriptions, and fail to comply with medication recommendations, his treatment providers consistently rated his functioning as "no problem," good, mild, or, at most, moderate (Tr. 475-521).

In 2012, Nurse Zimmerman opined that Plaintiff's drinking habits may be impacting his sleep and irritability (Tr. 56). Because Plaintiff did much better when compliant with Lithium, she insisted that Plaintiff go back on medication as prescribed (Tr. 41-44, 55). Plaintiff continued to abuse his Xanax prescriptions and occasionally drink, but Nurse Zimmerman assessed only "mild" irritability (Tr. 24-25, 44). Also, Plaintiff's functional ratings continued to reveal no more than mild symptoms (Tr. 22-24, 29-35).

By January 2013, David K. Swope, M.D. again adjusted Plaintiff's medication and noted that Plaintiff reported no hallucinations or suicide ideations (Tr. 25). Plaintiff's counseling goal continued to be "increase getting out and having a better life" by controlling mood swings (Tr. 36).

Karen Steiger, Ph.D. reviewed Plaintiff's record in January 2010, and noted that, at most, the record supported a moderate limitation in stress tolerance and relating to unfamiliar others (Tr. 378-95). Dr. Steiger opined that Plaintiff could perform routine tasks in settings with a static routine and no strict time or production demands (Tr. 378-95).

In June 2010, David Demuth, M.D. also reviewed the record and agreed that Plaintiff retained the ability to perform routine tasks, notwithstanding his psychological impairments (Tr. 404). Dr. Demuth affirmed Dr. Steiger's assessment (Tr. 404).

## IV. SUMMARY OF TESTIMONY

In 2011, Plaintiff reported that he spends most of his day on the computer, smoking, or playing video games (Tr. 455, 478). He also stated that he mops and cleans the house to keep busy (Tr. 515). In 2012, Plaintiff reported that he cared for a dog and cat, and was "very busy" raising ducks and chickens (Tr. 34, 44). At the administrative hearing, Plaintiff also told the ALJ that he spends time on the computer doing research and reprogramming (Tr. 109-11).

Thereafter, the ALJ asked the VE to assume a hypothetical individual with Plaintiff's vocational characteristics who had no exertional limitations, but was non-exertionally limited to routine tasks in setting with a static routine consisting of no production rate pace and no more than occasional superficial contact with co-workers and the public (Tr. 71, 116-17).

The VE testified that such an individual could not return to Plaintiff's past work, but that there existed over two million examples of unskilled other jobs at the medium level of exertion in the

national economy that such an individual would be capable of performing (Tr. 118). Examples included the jobs of cook's helper, dining room attendant, and cleaner (Tr. 118).

### V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. 404.1520(d)  and 416.920(d) (1992);

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f) and  416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir.

1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Plaintiff asserts one legal issue:

Whether the ALJ employed the proper legal criteria and his decision was supported by substantial evidence, specifically regarding his evaluation of Plaintiff's psychological impairments.

Here, Plaintiff's only argument is that "it is not clear" whether the ALJ considered the evidence submitted by Dr. Huhn and Ms. Zimmerman (Pl.'s Br. at 19). Plaintiff more specifically asserts that by ignoring or rejecting the opinions of Dr. Huhn and Ms. Zimmerman and adopting the opinion of the state agency's psychological experts, the ALJ "substituted" his opinion for that of a medical professional (Pl.'s Br. at 14-16).

For the following reasons, the undersigned concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not preclude all work activity, and, thus, were not disabling.

First, the ALJ did consider the evidence submitted by Dr. Huhn and Ms. Zimmerman (Tr. 75-76, citing Exhs. 14F and 19F). The ALJ considered that Dr. Huhn indicated Plaintiff's condition was not due to a recent trauma, but, rather, from events in the remote past (Tr. 75, citing Exh. 14F). As the ALJ correctly observed, Plaintiff was able to work until his alleged onset date, notwithstanding his childhood traumas, and Dr. Huhn's notes did not indicate a worsening of his childhood condition (Tr. 75, citing Exh. 14F).

The ALJ considered that the treatment records of Dr. Huhn and Nurse Zimmerman indicated that Plaintiff had a long history of self-medicating with marijuana and chose to continue to do so, rather than comply with prescribed medications (Tr. 75-76, citing Exhs. 14F, 19F). Therefore, it is evident that the ALJ did consider the records of Dr. Huhn and Nurse Zimmerman.

Notwithstanding Plaintiff's non-compliance with medical recommendations and his daily drug use, the ALJ gave Plaintiff the benefit of the doubt and found that his mental impairments could reasonably cause restrictions in terms of stress tolerance (Tr. 76, citing Exhs. 14F, 19F). As the ALJ stated, treatment records support some moderate restrictions in terms of task complexity, work pace, and social interactions (Tr. 76). Because the ALJ's RFC assessment and hypothetical question to the

9

VE accurately reflected Plaintiff's credible limitations, the undersigned concludes that substantial evidence supports that the ALJ's reliance on the VE's testimony was proper (Tr. 77, Finding No. 10).

Next, Nurse Zimmerman's treatment notes submitted post-decision do not undermine the ALJ's reliance on the opinions of the state agency experts, Drs. Steiger and Demuth, and the consultative examiner, Dr. Dallara (Tr. 76). *See* 20 C.F.R. Section 404.1527(f), Social Security Ruling (SSR) 96-6p.  As the ALJ correctly noted, Dr. Dallara found that Plaintiff had no restriction in his ability to understand, remember, and follow simple task instructions, and only mild restrictions in his ability to relate with others, concentrate, and tolerate full-time work stress (Tr. 76, citing Exh. 6F).  Because Dr. Dallara's assessment was "generally consistent" with Dr. Steiger's assessment, the ALJ correctly assigned their opinions significant weight (Tr. 76, citing Exhs. 6F, 7F).  *See* 20 C.F.R. Section 404.1527(f) SSR 96-6p.

The only evidence put forth by Plaintiff to support his allegations of severe limitations consists of global assessment of functioning scores (GAF) (Pl.'s Br. at 16).  However, a GAF score is not dispositive evidence on the issue of disability, and Plaintiff's suggestion that his GAF scores are significant evidence undermining the ALJ's RFC finding is legally and factually unsupported.

Under the regulations, a finding of disability, i.e, the issue of whether a claimant is able to work, is an administrative finding, not a medical finding.  20 C.F.R. Section 404.1527(d)(1)-(3); SSR 96-5p.  Thus, a treating physician's opinion of disability, such as a GAF score, does not bind the Commissioner.  Id.

The regulations provide that the ALJ will consider all of the evidence in accordance with 20 C.F.R. Section 404.1527(b).  In fact, if an ALJ were to rely solely on a low GAF score to the degree suggested by Plaintiff, such reliance would nullify the regulations, and there would be no need for an ALJ review.  Furthermore, the Sixth Circuit has recognized the limited value of GAF scores in

assessing disability under Social Security's regulations.  *See, Oliver v. Comm'r of Soc. Sec.*, 415 F.App'x 681, 684 (6th Cir. 2011); *Kornecky v. Comm'r of Soc. Sec.,* 167 F.App'x 496, 511 (6th Cir. 2006); *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002).

Even assuming that Plaintiff's GAF scores were legally significant, GAF scores reflect a clinician's assessment on a particular day and are based upon the claimant's self-reported symptoms, rather than functioning.  Thus, they cannot establish the existence of a disabling impairment expected to last for twelve months, as required by the Act.  DSM-IV 30.  Here, Plaintiff's GAF scores do not accurately reflect the mild to no more than moderate work-related limitations established for the durational period.  *See* 20 C.F.R. Section 404.1505, 404.1520(4); *Despins v. Comm'r of Soc. Sec.,* 257 F.App'x 923, 930 (6th Cir. 2007).  In fact, the record showed that Plaintiff's symptoms, when he complied with medical prescriptions rather than drug and alcohol use, responded well to minimal and short-term treatment (*see, e.g.,* Tr. 55).  *See* 20 C.F.R. Section 404.1530.  Furthermore, although Plaintiff continued to drink and use marijuana, abuse his Xanax prescriptions, and refuse to comply with medication recommendations, his functioning was continually rated as "no problem," good, mild, or, at most, moderate (Tr. 475-521).

Hence, the ALJ correctly found that Plaintiff failed to show that his medically-determinable mental impairments resulted in work-preclusive functional limitations.  To the extent that the record supports an impairment in stress tolerance and being around others, the ALJ adequately accommodated any credible limitations resulting therefrom by restricting Plaintiff to routine tasks in settings with a static routine consisting of no production rate pace and no more than occasional superficial contact with co-workers and the public (Tr. 74, Finding No. 5).  *See* SSR 83-13.

Based on the record as a whole, and giving Plaintiff's symptoms some credence, the ALJ correctly determined that Plaintiff could do work other than work he had done in the past at step five.

The ALJ correctly relied upon vocational expert (VE) testimony, which revealed that an individual with Plaintiff's limitations and vocational profile could perform other work existing in significant numbers in the national economy, citing to over two million examples of routine, low stress unskilled medium jobs not requiring more than superficial contact with people (Tr. 118).

## VIII.  CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that, considering Plaintiff's education, work experience, and medical functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff could have performed, and, therefore, was not disabled.  Hence, he is not entitled to DIB and SSI.

Dated: October 18, 2013                     */s/George J. Limbert*
                                             GEORGE J. LIMBERT
                                             UNITED STATES MAGISTRATE JUDGE